873 P.2d 800

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Kevin PRATT, Defendant–Appellant.**

**Nos. 18424, 19736.**

Supreme Court of Idaho,
Boise, February 1993 Term.

July 27, 1993.

Mark Vovos, Spokane, WA, and Joan M. Fisher, Genesee, for defendant-appellant. Joan M. Fisher argued.

Larry EchoHawk, Atty. Gen. and Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent. Lynn E. Thomas argued.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

### A. *The Guilt Phase:*

On February 7, 1989, the State filed an information against appellant, James Kevin Pratt, charging him with eighteen crimes. The information alleged that a number of crimes occurred at the home of Louise Turner in Bonner County, Idaho, which were followed by crimes committed during the course of Pratt's attempt to flee from the police.[1] In addition, the information stated that the sentence for each crime should be extended pursuant to I.C. § 19–2520 because Pratt "displayed, used, threatened and attempted to use a firearm." Specifically, the information alleged that Pratt committed the following crimes:

| Count | Crime | Statute | Victim |
|---|---|---|---|
| I | First Degree Burglary | I.C. §§ 18–1401 and –1402 | Louise Turner |
| II | Robbery | I.C. §§ 18–6501 and –6502 | Peter Detorres |
| III | Second Degree Kidnapping | I.C. §§ 18–6501 and –4503 | Saul E. Quigley |
| IV | Aggravated Assault | I.C. §§ 18–901 and –905 | Saul E. Quigley |
| V | Aggravated Battery | I.C. §§ 18–903 and –907 | Mark A. Palanuik |
| VI | Aggravated Assault | I.C. §§ 18–901 and –905 | Peter Detorres |
| VII | " | " | Kathy Detorres |
| VIII | " | " | Mark A. Palanuik |
| IX | " | " | Tammy Palanuik |
| X | " | " | Angela Detorres |
| XI | " | " | Timothy Tucker |
| XII | " | " | Peter Detorres, Jr. |
| XIII | " | " | Rocky Krieger |

1. James Kevin Pratt did not commit the crimes by himself. His brother, Joseph Earl Pratt, was with him at all relevant times, and the two brothers were tried for their crimes together. For this Court's opinion in the Joseph Earl Pratt appeal, see *State v. (Joseph) Pratt*, 125 Idaho 546, 873 P.2d 848 (1993 Opinion No. 83).

| Count | Crime | Statute | Victim |
|---|---|---|---|
| XIV | " | " | Saul E. Quigley |
| XV | Aggravated Assault Upon A Law Enforcement Officer | I.C. §§ 18–901, –905, and –915 | Det. Harvey Thompson |
| XVI | Attempted First Degree Murder | I.C. §§ 18–306, –4001, –4002, and –4003(a)(d) | Mark A. Palanuik |
| XVII | " | " | Dep. Steve Barbieri |
| XVIII | First Degree Murder [2] | I.C. §§ 18–4001, –4002, –4003(a)(b)(d), and –4004 | Brent K. Jacobson |

Pratt was arraigned on February 7, 1989, and he pled "not guilty" to all counts.

On April 6, 1989, Pratt filed motions for a jury trial on the issue of the existence of aggravating circumstances, an advisory jury regarding sentencing, and sentencing by jury. In this regard, he cited the United States and Idaho constitutional guarantees of due process and trial by jury. The motions were heard on April 13, 1989, and the court issued its order denying the motions on April 21, 1989.

Appellant filed additional motions on April 6, 1989 and at the April 13, 1989 hearing. These include motions for jury sequestration, dismissal of counts V and XVI, counts XII, XIII, V, and XVI, counts IV and XIV, count XV, and count XVII, and for striking certain portions of Count XVIII. The court issued its order denying these motions on May 8, 1989. The court ruled that the jury would not be sequestered at trial, only during deliberation. It also ruled that the evidence at the preliminary hearing was sufficient to support the criminal counts challenged by Pratt. Further, the court ruled that counts IV and XIV, regarding aggravated assault against Saul E. Quigley, were not duplicative.

As to the motion to strike a portion of Count XVIII, appellant moved that the following language be stricken:

and that at the time of the killing of such victim the victim was a peace officer, law enforcement officer, and executive officer duly commissioned as such by the United States Forest Service of the United States Department of Agriculture, and was acting in his lawful discharge of his official duties, and assisting the Bonner County Sheriff's Department. The Defendant knew or should have known that Brent K. Jacobson was such an officer so acting, and that said shooting and killing occurred after voice notification to the Defendant of the status of such officer and after the Defendant had been pursued for many hours by such law enforcement officers. Further, that such shooting and killing occurred during the perpetration and commission of the felony criminal offenses of burglary in the first degree, kidnapping in the second degree, and robbery; and was committed by the Defendant in the furtherance of said commission and perpetration of said felony criminal offenses, and to facilitate the escape and further the commission and perpetration of said felony offenses.

In support of this argument, Pratt cited I.C.R. 5.1 and I.C. §§ 18–4003(b), 19–510, and 19–5101(d). In regards to I.C.R. 5.1, the court ruled that it does not require specific findings of fact, only a finding of probable cause that a certain crime was committed by the defendant. As to the cited statutes, the court ruled that I.C. § 18–4003(b) is not limited by I.C. § 19–510, because to do so would exempt deputy sheriffs, Idaho State Police officers, and even the President of the United States from its protection. The court further ruled that "the legislature intended the protection of I.C. § 18–4003(b) to extend to all persons serving in the designated capacities of peace officer or executive officer [whether] federal or state." It also found that the victim fit within I.C. § 18–4003(b).

2. On February 7, 1989, and corrected on February 10, 1989, the State filed notice of its intent to seek the death penalty in the event Pratt was convicted of this count.

Finally, the court ruled that the Pratts were engaged in the commission of a felony during the killing, as they were escaping from the scene of the crime, because there was a "continuous and unbroken chain of events, . . ." citing *State v. Fetterly*, 109 Idaho 766, 710 P.2d 1202 (1986), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

After a fifteen day trial, the jury returned its verdict on June 9, 1989. The jury found Pratt "guilty" of first degree burglary, robbery, second degree kidnapping, nine counts of aggravated assault[3], aggravated assault upon a law enforcement officer, attempted first degree murder, and first degree murder. Pratt was found "not guilty" of aggravated battery upon Mark A. Palanuik. The jury's verdict of "guilty" for first degree murder was based upon its finding that "[t]he killing occurred during the perpetration or attempted perpetration of robbery, burglary or kidnapping" and "[t]he person killed was a peace officer or executive officer acting within the scope of his duties at the time of the killing."[4]

### B. *The Sentencing Phase:*

On November 27, 1989, the court issued its I.C. § 19–2515 findings. In its findings, the court discussed the general criminal conduct involved and Pratt's character, both of which it deemed to be "neither aggravating nor mitigating," and it identified mitigating circumstances, aggravating circumstances, and statutory aggravating circumstances. Finally, it weighed "all of the mitigating circumstances against each one of the aggravating circumstances."

As to mitigating circumstances, the court found the following to be neither mitigating nor aggravating: (1) Pratt's age (twenty seven); and (2) his parent's divorce when he was twelve years old. Further, the court ruled that because of Pratt's years of association with convicted spy and bank robber Christopher Boyce, Pratt's assertion of his "years as being largely self-sufficient and employed . . . will not be considered a mitigating circumstance nor will his years of association with Christopher Boyce be considered an aggravating circumstance." The court rejected the following as mitigating circumstances: (1) that Pratt did not intend to cause death and that the shooting resulted from Pratt's fear for his own life; (2) that at no time during the robbery or any of the subsequent events prior to the shooting at Smith Creek did Pratt inflict injury upon any person; (3) that Pratt was physically and mentally impaired at the time of the shooting; (4) that Pratt was fearful of being shot and killed; and (5) that Pratt promptly admitted and stipulated to all material facts surrounding the commission of the crime, leaving as the only matter in issue, the intent with which he acted. The court found the following as mitigating circumstances:

1. The Defendant has usually been a productive, law abiding citizen.
2. He has no history of prior acts of violence against other persons.
3. Defendant has no prior record of felony criminal convictions.

The court found the following acts to be aggravating circumstances: (1) the burglary was a "deliberately thought-out plan," as the Pratt brothers armed themselves and put on black clothing and masks; (2) Pratt used a firearm during the robbery, threatening and intimidating nine people; (3) Pratt committed aggravated assault upon nine people and committed second degree kidnapping against Saul E. Quigley; (5) Pratt refused to surrender to the police; (6) that the firing occurred as part of an "ongoing, continuous, uninterrupted" series of acts; (7) Pratt shot at and attempted to kill Officer Steve Barbieri; and (8) Pratt "willfully and intentionally and unlawfully" shot and killed Officer Brent K. Jacobson.

---

3. The jury was given ten counts of aggravated assault, including one count of aggravated assault upon Saul E. Quigley, Count IV. The jury was also submitted Count III, charging Pratt with the second degree kidnapping of Saul E. Quigley. The jury returned its verdicts upon Counts III and IV together, only finding Pratt "guilty" of second degree kidnapping.

4. The jury did not find, as grounds for its verdict on first degree murder, "[w]ilfully deliberate and premeditation" or "[l]ying in wait," options set forth on the verdict form.

The court found the following acts to be aggravating circumstances under I.C. § 19–2515(g): (1) Pratt knowingly created a great risk of death to many persons; (2) Pratt exhibited utter disregard for the lives of police officers attempting to place him under arrest; (3) Pratt exhibited a propensity and willingness to take the life of any police officer attempting to place him under arrest; and (4) Pratt killed a peace officer acting in the lawful discharge of an official duty and was known or should have been known by Pratt to be an officer so acting. The court rejected as a statutory aggravating circumstance that the killing of Brent Jacobson constituted the killing of a police officer *because* of the exercise of an official duty.

The court then weighed *all* of the mitigating circumstances against *each* aggravating circumstance. It found that the mitigating circumstances outweighed all of the aggravating circumstances except:

> The mitigating circumstances herein do not outweigh the statutory aggravating circumstance found in I.C. § 19–2515(g)(7). The killing herein was of a police officer acting in the line of duty, known by the Defendant to be acting in the line of duty and committed during the on-going commission of serious and dangerous felony offenses and was accompanied with the specific intent to cause death.

The court thus concluded that the death penalty should be imposed.

On November 30, 1989, the court issued its judgment and sentence. For first degree burglary, Pratt was sentenced to ten years fixed, to run concurrent with his robbery sentence. For robbery, he was sentenced to twenty-five years fixed. For second degree kidnapping, he was sentenced to ten years fixed, to be served consecutively to his sentence for robbery. For each of the nine counts of aggravated assault, he was sentenced to two years fixed, to be served concurrently with his sentences for robbery and

burglary. For aggravated assault upon a law enforcement officer, he was sentenced to a fixed term of five years, to be served consecutively to his sentences for robbery and second degree kidnapping. For attempted first degree murder, he was sentenced to a fixed term of fifteen years, to be served consecutively to his sentences for robbery, second degree kidnapping, and aggravated assault upon a law enforcement officer. For first degree murder, he was sentenced to death by lethal injection.[5]

On March 20, 1990, and amended on May 20, 1991, Pratt filed an I.C.R. 35 motion for reduction of sentence. Grounds for the motion were:

> (a) the sentences are unduly harsh and excessive;

> (b) the sentence is illegal in that it violates Defendant's constitutional protections against double jeopardy;

> (c) the conviction and sentence imposed for Count XVII, murder in the first degree, bars conviction and sentence for all other counts as included offenses under I.C. § 19–1719.

On June 10, 1991, the court issued its order partially granting Pratt's I.C.R. 35 motion. Considering the circumstances surrounding the crimes, as well as Pratt's subsequent conduct, the court rejected his argument that the sentences were unduly harsh or excessive. As to double jeopardy, the court:

> ordered that the sentences imposed in this case upon Count I for burglary and Count II for robbery and Count III for kidnapping in the second degree ... be merged into the sentence for first degree murder in Count XVIII.[6]

The court, however, rejected Pratt's argument that all of the felony charges alleged to have occurred prior to the homicide be merged into the first degree murder charge. In this regard, the court pointed to the por-

---

5. Pratt also received longer indeterminate terms for each count and extended sentences on several counts because of his use of a firearm during the commission of the crimes. I.C. § 19–2520. The death warrant was issued on January 3, 1992.

6. Count XVI of the information, regarding attempted first degree murder of Mark A. Palanuik, was not submitted to the jury. Seventeen criminal counts were submitted to the jury. Count XVII was for the first degree murder of Brent Jacobson. The district court's reference to "Count XVIII" should be "Count XVII."

tion of the charge relating to the killing of a police officer performing his or her duties, and that felony murder, I.C. § 18–4003(d), does not apply to aggravated assault, aggravated assault upon a law enforcement officer, or attempted murder.

Finally, the court addressed Pratt's argument, raised during the hearing, that his sentence was not constitutionally proportional because his brother was not sentenced to death. In this regard, the court pointed to the following reasons for rejecting this argument: (1) It was Pratt's idea to commit the robbery; (2) it was he who seized the hostage; (3) it was he who shot at Officer Thompson during the car chase; (4) the evidence supported the inference that Pratt was the first to fire his weapon when the police demanded surrender; and (5) it was undisputed that projectiles from James Pratt's weapon caused the death of Brent Jacobson. Pratt's sentences were restructured as follows:

> [T]he sentences for the nine counts of aggravated assault shall be those first served and that the same shall be served concurrently. The sentence for aggravated assault upon a police officer shall be the sentence next served and shall be consecutive to the sentences for aggravated assault. The sentence for attempted first degree murder of Steve Barbieri shall be the next sentence to be served and shall be consecutive to that of aggravated assault upon a law enforcement officer. The sentence of death imposed for the murder in the first degree of Brent Jacobson shall be imposed when the Defendant is so executed. . . .

An order amending sentence to this effect was filed on December 26, 1991.

### C. The Post–Conviction Relief Phase:

On January 8, 1990, Pratt filed a petition for post-conviction relief. The petition was amended on February 12, 1990, and, pursuant to the State's motion for a more particular statement, on May 28, 1991. Finally, with permission, Pratt filed a third amended petition for post-conviction relief on October 3, 1991. Following briefing by both parties, the court issued its decision denying Pratt's petition on November 22, 1991.

In his petition for post-conviction relief, Pratt raised issues concerning: (1) ineffective assistance of counsel; (2) failure to appoint qualified counsel at a reasonable rate of compensation; (3) deprivation of his right to have counsel of his choice represent him and to represent himself; (4) failure to appoint a mental health expert; (5) the trial judge's failure to reveal what he knew about Pratt's connection with Christopher Boyce; (6) misconduct by a bailiff during deliberations; (7) misconduct by jurors; (8) failure to have a jury find aggravating factors; (9) use of immunized testimony (Pratt was granted immunity to testify against Christopher Boyce in federal court); (10) use of hearsay during sentencing; (11) *ex parte* communication between the judge and prosecutor; (12) newly discovered evidence; and (13) prosecutorial misconduct. The court rejected all of the arguments raised by Pratt.

## ISSUES ON APPEAL

Pratt properly filed a notice of appeal from the judgment of conviction, partial denial of his I.C.R. 35 motion, and denial of his petition for post-conviction relief. On appeal, Pratt raises the following issues:

I. Did the magistrate violate Pratt's constitutional right to counsel, Idaho Const. art. I, § 13 and U.S. Const. amend. VI, by denying his motion for a continuance, which was made at a preliminary hearing for the purpose of allowing time for a private attorney from Colorado to prepare to represent Pratt, and by not advising Pratt of his right to represent himself?

II. Did the district court violate Pratt's rights to a fair and impartial jury and due process by denying his motion to strike that portion of the information regarding the deceased victim's status as a peace officer?

III. Did the district court violate appellant's rights to a jury trial and due process by denying his motion to strike those portions of the information and jury instructions regarding felony murder?

IV. Was Pratt erroneously convicted of *attempted* felony murder?

V. Did the district court violate Pratt's right to a fair trial by giving the jury instructions that were misstatements of the law or misleading and confusing?

VI. Was Pratt convicted and sentenced for multiple counts in violation of double jeopardy guarantees?

VII. Did the district court err in using Pratt's prior immunized testimony from the federal trial against Christopher Boyce during sentencing proceedings?

VIII. Did the district court err by considering, during sentencing, information not made available to Pratt?

IX. Did the district court violate Pratt's freedom of association by considering, during sentencing, his association with Christopher Boyce?

X. Did the district court err by failing to consider certain mitigating factors during sentencing?

XI. Did the district court err by not considering the alternative sentences available for Pratt's conviction for first degree murder?

XII. Is Idaho's statutory death penalty structure unconstitutional?

XIII. Did the district court err in denying Pratt's motion to disqualify the trial judge from presiding at the post-conviction proceedings?

XIV. Did the district court err by denying Pratt's petition for post-conviction relief on the ground that the bailiff engaged in communications with the jury regarding the case and failed to keep the jurors free of external communications?

XV. Did the district court err by ruling that Pratt's right to a fair trial was not deprived by the state's alleged failure to disclose exculpatory evidence?

XVI. Automatic review pursuant to I.C. § 19–2827.

7. On January 16, 1989, Pratt requested, and the court appointed, a public defender to represent

## ANALYSIS

### I.

The record reveals that at a preliminary hearing dated January 24, 1989, Pratt's court-appointed counsel [7] notified the court that Pratt did not want a public defender, that his family had retained private counsel from Colorado, and that the private attorney would need two weeks to prepare for a preliminary hearing. The court denied this request for a continuance, and it ordered the public defender to continue to represent Pratt.

A trial court has discretion to grant or deny a continuance, but that discretion is not unbridled. *State v. Ward,* 98 Idaho 571, 574, 569 P.2d 916, 919 (1977). Furthermore, because the constitutional right to counsel is at issue, we review the record independently to determine if this constitutional right has been abridged. *State v. Carman,* 116 Idaho 190, 192, 774 P.2d 900, 902 (1989) (*Carman II* ), affirming 114 Idaho 791, 760 P.2d 1207 (Ct.App.1988) (*Carman I* ).

When a defendant requests new counsel, several factors have been identified for use in making the determination of whether his request for a continuance should be granted:

the timing of the motion; the requested length of delay, including whether the delay is an attempt to manipulate the proceedings; the number, if any, of similar continuances sought by the defendant; inconvenience to witnesses; any prejudice to the prosecution; whether an irreconcilable conflict exists between the accused and counsel; and the qualifications possessed by present counsel.

*Carman II,* 116 Idaho at 192, 774 P.2d at 902.

The record shows that the motion came on the first day of what eventually became a four-day preliminary hearing. The court noted it had not been made aware of any efforts on Pratt's behalf to secure private counsel until this day. Further, the court

him in this case.

noted that it had gone through "administrative gymnastics" to schedule the hearing. The requested length of the delay was two weeks. In addition, there was no evidence that Pratt was attempting to manipulate the proceedings; he had not previously requested a continuance, and there were no findings regarding inconvenience to witnesses or prejudice to the prosecution. Finally, the record is devoid of any specific "irreconcilable conflict" between Pratt and his public defender, and there was no discussion of the public defender's qualifications.

From the record, it is clear that the magistrate should have granted Pratt's motion for a continuance. The magistrate's reasons for denying the continuance, not being made aware of Pratt's efforts to retain private counsel and "administrative gymnastics," when considered in light of the above-quoted factors, amount to "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Carman I*, 114 Idaho at 793, 760 P.2d at 1209, quoting *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983), quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964).

■ The purpose of a preliminary hearing is to reach a determination of whether "a public offense has been committed and that there is probable or sufficient cause to believe that the defendant committed such offense...." I.C.R. 5.1(b). *State v. O'Mealey*, 95 Idaho 202, 204, 506 P.2d 99, 101 (1973), citing I.C. §§ 19–804, 19–815. It is the state's burden to show that "substantial evidence," and not evidence beyond a reasonable doubt, supports the two-pronged determination. I.C.R. 5.1(b); *State v. Owens*, 101 Idaho 632, 636, 619 P.2d 787, 791 (1980). A magistrate's determination that probable cause exists to bind a defendant over to the district court for trial "should be overturned only on a clear showing that the committing magistrate abused his or her discretion." *Owens*, 101 Idaho at 636, 619 P.2d at 791, citing *O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973); *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967). Where a defendant receives a fair trial, errors connected with the preliminary hearing will afford no basis for disturb-

ing the judgment of conviction. *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336, *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983).

■ Our independent review of the record, and analysis below regarding other issues, leads us to conclude that Pratt did receive a fair trial. Therefore, the magistrate's error in not granting the continuance did not so taint the process as to require reversal. Furthermore, the magistrate properly reviewed the evidence before her, and she found that substantial evidence supported her determination to bind Pratt over to the district court for trial.

## II.

■ Pratt argues that the deceased victim, Brent Jacobson, was not a "peace officer," and that, as such, Pratt could not be convicted of first degree murder as it is defined in I.C. § 18–4003(b) (1977):

(b) Any murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder of the first degree.

Pratt contends that Brent Jacobson, who was an officer of the United States Forest Service, was not a "peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney...." For support, Pratt cites statutory definitions:

19–510. **Peace officers enumerated.**— A peace officer is a sheriff of a county, or a constable, marshal, or policeman of a city or town.

19–5101 [ (1981) ]. **Definitions.**—As used in this act: ...

(d) "Peace officer" means any employee of a police or law enforcement agency which is part of or administered by the state or any political subdivision thereof and whose duties include and primarily consist of the prevention and detection of crime and the enforcement of penal, traffic or highway laws of this state or any political subdivision.

Neither I.C. § 19–510 nor I.C. § 19–5101(d) (1981) apply to the relevant terms enumerated in I.C. § 18–4003(b) (1977). Idaho Code § 19–510 falls under title 19, chapter 5, Idaho Code, entitled "Complaint and Warrant of Arrest." This act deals with the procedure for lodging criminal complaints and issuing arrest warrants; it does not deal with substantive criminal law. The reason that "peace officer" is defined in this act is because our legislature has determined that only certain enumerated persons can execute an arrest warrant. I.C. § 19–509 ("The warrant must be directed to and executed by a peace officer."). Likewise, I.C. § 19–5101(d) (1981) applies only to the act under which it falls, title 19, chapter 51, Idaho Code, entitled "Peace Officer Standards and Training Council." The first sentence of I.C. § 19–5101 (1981) specifically limits its definitions to "[a]s used in this act."

Regardless of the victim's status or occupation as a "peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney," I.C. § 18–4003(b) (1977) operates as a type of first degree murder only if the victim "was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting." The facts in this case are clear: (1) Brent Jacobson was an officer of the United States Forest Service; (2) the United States Forest Service and Bonner County, Idaho, entered into an agreement whereby the United States Forest Service agreed "[t]o provide support and cooperation to Bonner County in the enforcement of State and local laws on lands and water within or a part of any unit of the National Forest System;" (3) Bonner County requested assistance from the United States Forest Service in tracking Pratt and his brother through the woods; (4) Brent Jacobson was assigned by the United States Forest Service to provide the requested assistance; and (5) in the course of fulfilling his duty to provide assistance in the enforcement of State law, Brent Jacobson was shot and killed by James Pratt. Furthermore, there is no dispute that the Pratt brothers were aware that they were being pursued by law enforcement officers. Officer Barbieri testified that immediately prior to the shootout,

he told the Pratt brothers to "[h]old it right there," and that Brent Jacobson said "Sheriff's Department. Don't move." (Tr. V. 12, p. 1814, ll. 20–24; p. 1815, ll. 9–11.) Pratt testified that immediately prior to the shootout he heard someone say "[d]rop your weapons" (Tr. V. 14, p. 2300, ll. 1–2), and he did not dispute, during his testimony, that he was aware that he was shooting at law enforcement officers. Officer Brent Jacobson was clearly acting in the lawful discharge of his official duty, was known to be doing so by Pratt, and, therefore, his death was that of a law enforcement officer under I.C. § 18–4003(b) (1977).

### III.

■ Pratt contends that the murder of Brent Jacobson did not occur "in the perpetration of, or attempt to perpetrate" the robbery, burglary, and kidnapping that had occurred earlier at or near the residence of Louise Turner, *i.e.*, that the murder of Brent Jacobson did not constitute "felony murder." The thrust of Pratt's argument is that the earlier felonies had "terminated" prior to the killing, therefore there was no underlying felony to trigger I.C. § 18–4003(d).

Idaho Code § 18–4003(d) (1977), Idaho's "felony murder" statute, provides:

(d) Any murder committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, kidnapping or mayhem is murder in the first degree.

We have addressed this very argument before. In *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), the appellant argued that the murder of Sterling Grammer, which occurred the morning after the appellant and Karla Windsor entered Grammer's home to steal Grammer's personal property, was not "felony murder" because "the burglary was complete before the victim arrived at his home." *Fetterly,* 109 Idaho at 771, 710 P.2d at 1207. This Court agreed with the state's position in *Fetterly,* that the appellant's construction of the "felony murder" rule " 'would deprive [it] of any validity unless the victim was killed while the burglar had one leg over the windowsill or one foot

across the threshold.' " *Fetterly,* 109 Idaho at 771, 710 P.2d at 1207. We held that "Grammer's death was part of a stream of events which began the evening Fetterly and Windsor entered Grammer's home and ended the following day when Grammer's possessions were removed from the home." *Fetterly,* 109 Idaho at 771–72, 710 P.2d at 1207–08.

In the present case, the trial court properly held that Brent Jacobson's death was also part of the stream of events which began when the Pratt brothers entered the residence of Louise Turner for the purpose of stealing money, were suddenly caught in the middle of the act by police officers, took a hostage to facilitate their escape, led the pursuing officers on a car and foot chase, and ended the following day when the Pratts finally surrendered to the pursuing police officers.

### IV.

 Pratt argues that because intent is *not* an element of felony murder, *State v. Windsor,* 110 Idaho 410, 419, 716 P.2d 1182, 1191 (1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); I.C. § 18–4003(d), but *is* an element of attempt to commit a crime, I.C. § 18–305, there is no such crime as *attempted* felony murder. Furthermore, Pratt argues that since the jury rejected "lying in wait" as a ground for its verdict of murder, the only type of murder he could have been found guilty of committing against Deputy Steve Barbieri, who was present with Brent Jacobson during the fatal shoot-out, was felony murder.

We agree with Pratt. *Attempted* felony murder is not a crime in Idaho. Instead, there is either the crime of murder, or the crime of attempt to commit a crime, in which case the state bears the burden of proving that the defendant *intended* to commit the crime. From the jury's verdict on Count XVI, we cannot discern which theory the jury agreed upon to convict Pratt of the attempted first degree murder of Deputy Steve Barbieri. The jury could have based its verdict upon Barbieri being a law enforcement officer or upon the attempt occurring during the commission of certain felonies. Since we cannot discern the jury's theory

from the record, we vacate Pratt's conviction and sentence for Count XVI of the jury's verdict, regarding attempted first degree murder of Deputy Steve Barbieri.

### V.

 Pratt attacks the reasonable doubt, good character, and sympathy instruction, Jury Instruction ("J.I.") 1, the criminal negligence instruction, J.I. 49, the justifiable homicide by a police officer instruction, J.I. 82, and the self-defense instructions, J.I. 83–87A.

That portion of J.I. 1 regarding the state's burden to prove the defendant's guilt beyond a reasonable doubt provides:

> The information in this case is of itself a mere accusation or charge against the defendant, and is not of itself any evidence of the defendant's guilt, and you are not to be prejudiced or influenced to any extent against the defendant because a criminal charge has been made. The law presumes every person is innocent. This presumption of innocence is not a mere form to be disregarded at pleasure, but it is an essential part of the law, and it is your duty to give the defendant the full benefit of this presumption until the [state] has proven the defendant guilty beyond a reasonable doubt.

> To justify a conviction of the defendant, the burden is on the prosecution to prove beyond a reasonable doubt that the defendant is guilty as charged in the information. If the evidence fails to so convince you it is your duty to acquit the defendant. You are not at liberty to adopt unreasonable theories or suppositions in considering the evidence in order to justify a verdict of guilty.

> A reasonable doubt is that state of mind which, after a full consideration of all the evidence both for the State and the defense, leaves your minds in a condition that you do not feel an abiding faith amounting to a moral certainty that the defendant is guilty as charged in the information. Even where the evidence is so strong that it demonstrates the probability of the guilt of the party accused, still if it fails to

establish the defendant's guilt beyond a reasonable doubt then you must acquit the defendant. To convict the defendant, the evidence must, to your minds, exclude every reasonable hypothesis other than the guilt of the defendant. If after consideration of all the evidence in the case, you can reasonably explain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you should acquit.

A doubt produced by undue sensibility in the mind of the juror in view of the consequences of a guilty verdict, is not a reasonable doubt, and the jury are not allowed to create sources or materials of doubt by trivial and fanciful suppositions or by remote conjectures as to possible state of facts different from those established by the evidence. Your oath imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered, and, in consideration of the case, the jury are not to go beyond the evidence to hunt up doubts. A doubt to justify an acquittal must be reasonable.

The law, in order to convict, does not require the guilt of the defendant to be established to an absolute certainty, but it does require guilt to be established to your satisfaction to a moral certainty, and that is a certainty that convinces and directs your understanding and satisfies your reason and judgment of the truth of the charge.

If you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt.

We have explained that the analysis of a constitutional attack on a reasonable doubt jury instruction "must begin with the fundamental principle of criminal law:"

Lest there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the accused] is charged.

*State v. Rhoades,* 121 Idaho 63, 82, 822 P.2d 960, 979 (1991), *cert. denied,* —— U.S. ——,

113 S.Ct. 962, 122 L.Ed.2d 119 (1993), quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). This fundamental principle of criminal law requires that "when a jury is instructed on the reasonable doubt standard, the instruction cannot raise the degree of doubt necessary for an acquittal." *Rhoades,* 121 Idaho at 82, 822 P.2d at 979.

Like the appellant in *Rhoades,* Pratt contends that the reasonable doubt instruction minimizes the state's burden of proof, and he cites *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), *overruled in part, Estelle v. McGuire,* 502 U.S. 62, ——, n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991), a *per curiam* opinion. However, as this Court held in *Rhoades,* 121 Idaho at 82, 822 P.2d at 979, the reasonable doubt instruction in this case is not similar to the reasonable doubt instruction in *Cage.* Instead, the reasonable doubt jury instruction in this case is "substantially the same" as the instructions given in *Rhoades* and *State v. Cotton,* 100 Idaho 573, 577, 602 P.2d 71, 75 (1979). *State v. Hoffman,* 123 Idaho 638, 643, 851 P.2d 934, 939 (1993). We cannot say that the instruction misstated the law, or was so confusing and argumentative as to mislead the jury. *Rhoades,* 121 Idaho at 83, 822 P.2d at 980.

We also hold that the other jury instructions attacked by Pratt do not misstate the law. "Reversal is not required where an instruction does not contain a misstatement of the law." *State v. Enno,* 119 Idaho 392, 403, 807 P.2d 610, 621 (1991). Jury Instructions 1, 49, 82, and 83–87A correctly state the law. We do note, however, that J.I. 82, regarding justifiable homicide by a police officer, was not relevant, as there was no deadly force used to effect Pratt's arrest, and Pratt did not challenge the force employed by the police officers. The instruction was mere surplusage, and Pratt has shown no prejudice therefrom. In addition, we note that the jury was instructed upon criminal negligence, J.I. 49. Pratt argues that J.I. 49 lowered the state's burden of proof for the alleged crimes. However, the jury was specifically instructed on the elements of each crime charged and was in-

structed that the state had the burden to prove each element of each crime beyond a reasonable doubt: J.I. 9, regarding first degree burglary; J.I. 10, regarding robbery; J.I. 11, regarding kidnapping; J.I. 13, regarding aggravated assault; J.I. 16, regarding aggravated battery; J.I. 20, regarding aggravated assault upon a law enforcement officer; J.I. 23, regarding attempted first degree murder, and; J.I. 26, regarding first degree murder.

### VI.

■ Pratt contends that he was convicted and sentenced upon multiple criminal counts in violation of double jeopardy guarantees, citing Idaho's double jeopardy statute, I.C. § 18–301.

The district court entered an order amending Pratt's sentences. In it, the trial court merged his sentences for burglary, Count I, robbery, Count II, and second degree kidnapping, Count III, into his sentence for first degree murder. Thus, we are not concerned with Counts I, II, and III, *State v. Pizzuto*, 119 Idaho 742, 758, 810 P.2d 680, 696 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled on other grounds, State v. Card*, 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992), but with Counts VI–XIV, regarding aggravated assault, Count XV, regarding aggravated assault upon a law enforcement officer, and Count XVII, regarding the first degree murder of Brent Jacobson.[8]

The record shows that Counts VI–XV and Count XVII involved criminal acts committed against different victims, *i.e.*, this is not a case where a defendant was convicted and sentenced upon multiple counts against the same victim. On this record, Pratt was not twice placed in jeopardy. *Pizzuto*, 119 Idaho at 758–59, 810 P.2d at 696–97. *See State v. Rupe*, 101 Wash.2d 664, 683 P.2d 571 (1984); *State v. James*, 631 P.2d 854 (Utah 1981) ("offenses committed against multiple victims are not the same, for double jeopardy purposes even though they may arise from the same criminal episode."); *Goodman v. State*,

601 P.2d 178 (Wyo.1979). Idaho's double jeopardy statute, I.C. § 18–301, "was not intended to prevent multiple prosecutions. or punishments in cases where more than one victim is involved." *State v. Garner*, 121 Idaho 196, 197, 824 P.2d 127, 128 (1992), quoting *State v. Lowe*, 120 Idaho 252, 255, 815 P.2d 450, 453 (1991).

### VII.

■ Pratt contends that the district court erred in using his prior immunized testimony from the federal trial against Christopher Boyce. The record reveals that the district court obtained the documents containing the immunized testimony pursuant to an order it issued to the federal custodian. The record also reveals that the court considered Pratt's immunized testimony during sentencing, in its I.C. § 19–2515 findings.

■ Pratt was granted immunity in the Christopher Boyce trial in March of 1982. The immunity order states in part:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Application heretofore made by Guy G. Hurlbutt, United States Attorney for the District of Idaho, to grant immunity to James Kevin Pratt in accordance with Title 18, United States Code, Section 6002 *et seq.*, be and the same is hereby allowed. It is further ORDERED that James Kevin Pratt testify fully and answer all questions asked of him in *United States v. Boyce, et al.*, Cr. No. 82–20001.

IT IS FURTHER ORDERED that no testimony or other information compelled under the Order or any information directly or indirectly derived from such testimony or other information, shall be used against James Kevin Pratt in any criminal case, except that the said James Kevin Pratt shall not be exempted by this Order from prosecution for perjury, giving a false statement, or otherwise failing to comply with this Order.

---

8. We are not concerned with Count XVI, regarding the attempted first degree murder of Deputy Steve Barbieri, because we have vacated Pratt's conviction for this count in section IV above.

.(Plaintiff's Exhibit 2.) Pratt was granted immunity under 18 U.S.C. § 6002, which provides:

### § 6002. Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House, and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

Thus, Pratt was granted use and derivative use immunity. While a grant of immunity does not confer constitutional rights upon the witness, use or derivative-use immunity "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness." *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972). Immunity operates to "compel testimony over a claim of the privilege" against self-incrimination. *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. Use and derivative use immunity granted in federal court applies to subsequent state court proceedings, *Adams v. Maryland*, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954), and at the sentencing stage of a criminal proceeding, *United States v. Lee*, 867 F.2d 206 (4th Cir.1989).

In its memorandum opinion on post-conviction relief, the district court addressed Pratt's immunity argument:

Herein, petitioner was not protected by the immunity agreement from information supplied by other witnesses. That would include his brother and co-defendant Joseph and the written statements of other witnesses contained in the information examined by the pre-sentence investigator. Thus, even if the record herein be excised of all statements made by petitioner concerning his involvement with Boyce, there is still ample evidence to show the nature and extent thereof. Thus, it cannot be said that petitioner has been prejudiced in any way by statements from his own mouth concerning his involvement with Boyce.

It must also be remembered that it was not the prosecution or the State that introduced the Boyce matter into the record and proceeding of petitioner at trial. The petitioner did so himself at the motion for change of venue. Therein, it appears to have been petitioner's position as expressed through his attorney that his involvement with Boyce was so generally known by the general population throughout northern Idaho that it would be impossible to select a fair and impartial jury when that general knowledge was coupled with the current publicity about the crimes for which he was about to stand trial.

As noted above, the record clearly shows that petitioner never at any time or any stage of the proceeding made any objection to introduction of evidence concerning his involvement with Boyce. . . .

Use and derivative use immunity "afford[s] protection against being 'forced to give testimony leading to the infliction of "penalties affixed to . . . criminal acts." ' " *Kastigar*, 406 U.S. at 453, 92 S.Ct. at 1661. Thus, independently obtained evidence is not subject to immunity. *United States v. Rivieccio*, 919 F.2d 812 (2nd Cir.1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2852, 115 L.Ed.2d 1020.

The record reveals that at a hearing on April 13, 1989, Pratt made a motion for change of venue. Pratt's attorney argued, essentially, that the newspaper coverage regarding this incident had been overwhelming and biased. In particular, Pratt's attorney pointed to newspaper articles concerning

Pratt's involvement in bank robberies with Christopher Boyce. In addition, the sentencing record reveals that Pratt's mother made comments about her son's involvement with Christopher Boyce to the presentence investigator, and that Pratt discussed the Boyce matter with the presentence investigator and a psychologist who prepared a written psychological evaluation of Pratt. Finally, the presentence investigation report prepared for Joseph Pratt reveals that he discussed the Boyce matter with the presentence investigator.

Our review of the record satisfies us that the district court's ruling regarding immunity is supported by substantial and competent evidence. In other words, the record reveals that the contents of the immunized testimony were independently available from sources other than the immunized testimony.

## VIII.

■ Pratt contends that the district court erred by considering, during sentencing, certain information about the Christopher Boyce case that was not made available to him. Specifically, Pratt argues that the court erred because it did not attach all of the documents that it received regarding the Christopher Boyce case to the presentence investigation report prepared for Pratt's sentencing.

On July 3, 1989 (after the jury verdict), the court issued an order directed to the United States Attorney's Office, directing it to "provide a photostatic copy of the investigative reports, immunity agreement and final disposition documents concerning any and all activities of JAMES KEVIN PRATT and JOSEPH EARL PRATT in the matters" involving Christopher Boyce. The information was ordered to be sent to either the court or to the Idaho Department of Corrections. On July 24, 1989, the day set for consideration of the pre-sentence report and a hearing on aggravating and mitigating circumstances, the court announced that those matters could not be taken up at that time, "because the federal government seems unable to find or file some records of what in the world went on in some prior proceedings...." On October 7, 1991, at a hearing on the petition for

post-conviction relief, the parties stipulated that the Boyce materials which had not been attached to the presentence investigation report "had been maintained at all times [after being received from the United States Attorney's Office] as an item by the Bonner County Clerk's office in the evidence room."

The foregoing reveals that Pratt was aware that the court had ordered the production of materials regarding the Christopher Boyce matter, and that those materials were on file, prior to sentencing, in the Bonner County Clerk's office. In its decision on post-conviction relief, the trial court found that all of the contents of the pre-sentence investigation had been fully disclosed to Pratt. There is substantial and competent evidence to support this finding.

## IX.

■ Pratt argues that the district court violated his freedom of association when it considered, during sentencing, his association with Christopher Boyce. For support, Pratt cites *Dawson v. Delaware*, —— U.S. ——, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

In *Dawson*, which was an appeal from capital sentencing by a defendant who had murdered a woman after he had escaped from prison, the parties agreed to submit a stipulation to the sentencing court regarding the defendant's association with a prison gang called the "Aryan Brotherhood:"

> The Aryan Brotherhood refers to a white racist prison gang that began in the 1960's in California in response to other gangs of racial minorities. Separate gangs calling themselves the Aryan Brotherhood now exist in many state prisons including Delaware.

*Dawson*, —— U.S. at ——, 112 S.Ct. at 1096. The United States Supreme Court noted that "we would have a much different case" if the prosecution had presented "credible and otherwise admissible evidence" that "the Aryan Brotherhood is a white racist prison gang that is associated with drugs and violent escape attempts at prisons, and that advocates the murder of fellow inmates." *Dawson*, —— U.S. at ——, 112 S.Ct. at 1097. It held that the First Amendment to the Con-

stitution of the United States "prevents Delaware here from employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried." *Dawson,* — U.S. at ——, 112 S.Ct. at 1099.

The *Dawson* case does not apply to the present case. The information considered by the sentencing court in this case, regarding Pratt's association with convicted spy and bank robber Christopher Boyce, was not merely evidence of Pratt's "abstract beliefs," but instead was specific information about Pratt's past conduct concerning his association with Boyce and knowledge of Boyce's status as a convicted and escaped spy and a bank robber. The sentencing court properly considered this information during Pratt's sentencing.

## X.

■ Pratt contends that the district court erred by not considering all mitigating circumstances before it sentenced him to death. Specifically, Pratt claims that the district court failed to consider: (1) the death of Brent Jacobson resulted from a shoot-out during which thirty to forty shots were fired by everyone involved in a period of ten seconds during which Pratt fired the least number of shots; (2) Pratt had been without food, he was wet, and had been traveling through two and one-half to three feet of snow for approximately thirty hours, and was undoubtedly suffering from hypothermia; (3) Pratt's work history; (4) Pratt's family background (his parents divorced when he was twelve years old); and (5) Pratt's fear for his own life during the shoot-out.

Before a convicted defendant may be sentenced to death, the district court is required to "set forth in writing any mitigating factors considered...." I.C. § 19–2515(e). In this regard, the district court, in the present case, set forth the following in its I.C. § 19–2515 findings:

### MITIGATING CIRCUMSTANCES

1. The Court has been requested to find it mitigating that Defendant was twenty-seven years of age at the time of the offense. The Court considers this to [be] neither mitigating nor aggravating.

2. JAMES PRATT has no history of prior acts of violence.

3. JAMES PRATT has no prior record of felony criminal convictions.

4. The Court has been requested to consider it as mitigating that JAMES PRATT'S parents were divorced when he was twelve years of age. But the evidence displays no connection between that fact and the commission of this crime. Therefore, his parent's divorce is considered neither mitigating nor aggravating.

5. The Court has been asked to consider it mitigating that Defendant did not intend to cause death and that the shooting resulted from Defendant's fear for his own life. The Court rejects this argument. There was no reasonable basis for Defendant to be in fear for his own life. The Court does not find it credible that he did so believe but rather that he was acting from a sheer determination not to be arrested. One cannot knowingly point and discharge a twelve gauge shotgun at another person at close range without being deemed to have intended to cause death.

6. The Court has been requested to find that Defendant's years as being largely self-sufficient and employed are mitigating circumstances. In some cases they might be so considered. But in this case, they are equally offset by Defendant's years of association with convicted spy and bank robber Christopher Boyce. He freely associated with Mr. Boyce for several years knowing that he was a convicted and escaped spy and was committing bank robberies. Defendant's actual participation with Boyce in his criminal activities was minimal. But certainly he knew of his activities and was willing to share the benefits thereof. The Court finds these two contrasting circumstances to offset each other. Therefore, Defendant's years of self-sufficiency will not be considered a mitigating circumstance nor will his years of association with Christopher Boyce be considered an aggravating circumstance.

7. The Court has been requested to find as a mitigating circumstance that at

no time during the robbery or any of the subsequent events prior to the shooting at Smith Creek did Defendant JAMES PRATT inflict injury upon any person. The Court rejects the request. It is true that he did not inflict any injury upon any person prior to shooting Officer Jacobson but JAMES PRATT did fire his shotgun at Officer Thompson from a vehicle being driven at a high rate of speed on a country road. Defendant denies any intent to injure Officer Thompson but the facts show at least gross disregard for the safety and life of the officer. The Court finds it more fortuitous than intentional that JAMES PRATT did not injure anyone before firing the fatal shot at Officer Jacobson.

8. The court has been requested to find as a mitigating circumstance that Defendant was physically and mentally impaired at the time of the Smith Creek shooting. By the time the shooting occurred, Defendant had been on foot outdoors in winter weather conditions for over twenty hours without food or sleep. There is no doubt he was cold, hungry and tired. His body core temperature measured at Bonner General Hospital shortly after his arrest was depressed below normal. The Court rejects these circumstances as mitigation because they were all conditions brought on by Defendant's own voluntary violation of the law. Further, this Court does not find sufficient evidence to support a conclusion that any condition of hypothermia was so advanced as to render the Defendant unable to think clearly and respond. Defendant and his brother had successfully eluded police all the previous night and day. The evidence shows they were able to plan and set a goal or objective for their actions and carry out direct and meaningful action to accomplish the same. They responded quickly and normally to stimuli. Th[eir] own testimony of their actions both immediately preceding the shooting and afterwards indicate no confusion of thought. None of the persons who first contacted this Defendant at the Middleton residence reported any sign of confused thought or ability to function.

9. The Court has been requested to find as a mitigating circumstance that at the time of the Smith Creek shoot-out, Defendant was fearful of being shot and killed. If Defendant entertained such a thought, it was not justified. Defendant had at no time been fired upon except in response to gunfire initiated by either Defendant or his co-Defendant. There is no credible or rational basis for Defendant to believe he was being fired upon at the Turner residence. Defendant was never fired upon by Officer Thompson until after Defendants had fired at him. At Smith Creek, either this Defendant or his co-Defendant initiated the gunfire. It was not started by the officers.

10. The Court has been requested to find as a mitigating circumstance that immediately after obtaining ballistics information confirming that his firearm was the one by which Jacobson had been killed, Defendant promptly admitted and stipulated to all material facts surrounding the commission of the offense, leaving as the only matter in issue, the intent with which he acted. The Court rejects this request. It appears to the Court that the Defendant simply concentrated his defense upon the question of intent after it became evident that all hard and physical evidence and scientific testimony would be against him.

In conclusion, this Court finds the following mitigating circumstances:

1. The Defendant has usually been [a] productive, law-abiding citizen.

2. He has no history of prior acts of violence against other persons.

3. Defendant has no prior record of felony criminal convictions.

The record shows that the district court *did* consider each of the mitigating circumstances proffered by Pratt, setting them forth in its findings, examining them, and discussing why each was or was not a mitigating circumstance. *See State v. Gibson*, 106 Idaho 54, 62, 675 P.2d 33, 41 (1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984). The court explained, in findings 5, 9, and 10 above, that James Pratt shot Brent Jacobson, that Pratt and his brother initiated the shoot-out, and that James Pratt admitted to firing the fatal shot.

Thus, the court considered, but rejected, Pratt's contention that the fact that he fired fewer shots was mitigating when he initiated the shoot-out and fired the fatal shot. The court considered, analyzed, and rejected Pratt's contention that it was a mitigating circumstance that he was suffering from hypothermia during the shoot-out in finding 8 above. In addition, the court considered, analyzed, and rejected Pratt's contention that his parent's divorce was a mitigating circumstance in finding 4 above. Likewise, the court considered, analyzed, and rejected Pratt's contention that fear for his own life was a mitigating circumstance in findings 5 and 9 above. Finally, the court found, in its summary conclusion of mitigating circumstances, that Pratt's history of productivity was a mitigating circumstance.[9]

The Idaho Code requires that the district court "set forth in writing any mitigating factors considered...." I.C. § 19–2515(e). This requirement serves two purposes:

> [It] helps assure that the imposition of the sentence of death is reasoned and objective as constitutionally required. It also serves the purpose ... of making the process for imposing death rationally reviewable. On review, if the mandates of I.C. § 19–2515(d) are met, we can determine whether the lower court overlooked or ignored any raised mitigating factors, whether the evidence supports the aggravating factors found, and finally whether the court has properly weighed all factors.

*State v. Osborn*, 102 Idaho 405, 415, 631 P.2d 187, 197 (1981), *appeal after remand*, 104 Idaho 809, 663 P.2d 1111 (1983).[10] In the present case, these purposes have been met. The court has set forth its findings with "reasonable exactitude," allowing this Court to exercise "meaningful appellate review." *Osborn*, 102 Idaho at 415, 631 P.2d at 197.

We hold that the district court properly set forth all mitigating factors that it considered.

## XI.

Pratt contends that the district court erred by failing to consider sentencing alternatives, *i.e.*, a term of years in prison.

It is within the discretion of the district court whether to impose a sentence of death. *State v. Sivak*, 119 Idaho 320, 324–326, 806 P.2d 413, 417–419 (1991). This discretion is a guided discretion, entirely "within the structure established by the legislature...." *Sivak*, 119 Idaho at 326, 806 P.2d at 419. In a first degree murder case, there are alternative sentences available, "such as a fixed life sentence," and these alternatives "are within the discretion of the sentencing court." *State v. Leavitt*, 116 Idaho 285, 294, 775 P.2d 599, 608, *cert. denied*, 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989), *appeal after remand*, 121 Idaho 4, 822 P.2d 523 (1991), *cert. denied*, — U.S. —, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992).

"Whenever this Court is faced with an appeal from a discretionary determination, we ask three questions:"

> (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*State v. Lewis*, 123 Idaho 336, 348, 848 P.2d 394, 406 (1993), citing *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991), citing *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

---

9. The court, in finding 6, considered, analyzed, and rejected Pratt's contention that his "years as being largely self-sufficient and employed are mitigating circumstances." The court rejected this circumstance due to Pratt's "years of association with convicted spy and bank robber Christopher Boyce." Nevertheless, the court did find that Pratt "has usually been [a] productive, law-abiding citizen," and it declared that to be a mitigating circumstance.

10. The legislature amended I.C. § 19–2515 in 1984. The version of I.C. § 19–2515 that the *Osborn* case addressed did not contain the present day subsection (b) of I.C. § 19–2515. As a result, what is now subsection (e) was then subsection (d). However, present-day subsection (e) is identical to then subsection (d). An Act Relating To Sentencing Information, ch. 230, § 1, 1984 Idaho Session Laws 549, 550–551.

In the present case, the record reflects that the sentencing court properly perceived its sentencing decision as one involving discretion. Before weighing each of the statutory aggravating circumstances against all of the mitigating circumstances, the court recognized that "I.C. § 18–4004 provides that the punishment for murder in the first degree shall be either death *or life imprisonment* but subject to the provisions of I.C. § 19–2515" (emphasis added), and that "[t]he death penalty cannot be imposed if the mitigating circumstances outweigh the gravity of each aggravating circumstance considered separately." Furthermore, the record shows that the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the choices (alternative sentences) available to it. The court properly set forth the mitigating factors considered, weighed all of the mitigating factors it found to exist against each one of the statutory aggravating factors it found to exist, and exercised its power to sentence Pratt to death. I.C. § 19–2515(c). Finally, the record reflects that the court reached its decision through an exercise of reason.

We hold that the district court did not err by failing to consider the alternative sentences available for a conviction for first degree murder. Instead, the district court properly understood that it had the power to impose lesser sentences, and it properly exercised its guided discretion by imposing the death penalty.

## XII.

 Pratt invites this Court to declare Idaho's statutory death penalty structure to be unconstitutional, as a violation of a criminal defendant's right to a jury trial, because it provides for a judge, rather than a jury, to sentence capital defendants.

We have previously held that capital defendants are "not entitled to jury participation in the sentencing process." *State v. Lankford,* 116 Idaho 860, 871, 781 P.2d 197, 208 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). We continue to adhere to this holding for the reasons previously set forth in *Lankford,* 116 Idaho

at 868–871, 781 P.2d at 205–208, and the cases set forth therein.

## XIII.

 Pratt contends that the district court erred in denying his motion to disqualify the judge from the post-conviction relief proceedings. Pratt alleged that the district judge was biased and prejudiced. Specifically, Pratt pointed to *ex parte* communications between the judge and the prosecutor and to the judge's extra-judicial knowledge of the Christopher Boyce connection.

During the September 30, 1991 hearing, this matter came before the court. The court denied the motion, ruling that the matter of *ex parte* communications had already been resolved, on September 9, 1991, when counsel was advised "[t]hat at no time were there ever any other conversations bearing on the merits of this case, the sentencing, but simply matters pertaining to routine administration of any trial." Further, as the state has recognized in its responding brief on appeal, the district judge was a retired district judge who was appointed to preside over the Pratt proceedings, and he had no clerks or secretaries assigned to him, forcing him to make his own scheduling arrangements.

Pratt offers no specific proof of any prejudice. Instead, he merely asserts bias and prejudice as grounds for his motion to disqualify and points, simply, to *ex parte* communications and extra-judicial knowledge. "In order to constitute legal bias or prejudice, allegations of prejudice in post conviction and sentence reduction proceedings must state facts that do more than 'simply explain the course of events involved in a criminal trial.'" *State v. Beam,* 115 Idaho 208, 215, 766 P.2d 678, 685 (1988), *cert. denied,* 489 U.S. 1073, 109 S.Ct. 1360, 103 L.Ed.2d 827 (1989). The district judge ruled that the *ex parte* communications were not substantive, but merely procedural, and, thus, did not prejudice Pratt. "[W]hen faced with an I.C.R. 25(b)(4) motion to disqualify for bias and prejudice in a post conviction or I.C.R. 35 proceeding, the trial judge need only conclude that he can properly perform the legal analysis which the law requires of

him or her...." *Beam*, 115 Idaho at 215, 766 P.2d at 685. Our review of the record satisfies us that the district court properly denied the motion to disqualify.

## XIV.

Pratt contends that the district court erred by denying his petition for post-conviction relief on the ground that the bailiff engaged in communications with the jury regarding the case and failed to keep the jurors free of other external communications. At the hearing, there was conflicting testimony on this issue. Pratt also contends that he was denied effective assistance of counsel at trial.

Post-conviction proceedings, brought under the Uniform Post–Conviction Procedure Act, title 19, chapter 49, Idaho Code, "are civil, rather than criminal, and the petitioner or applicant has the burden of proving the allegations which he or she contends entitle him or her to relief under the Act by a preponderance of the evidence." *Tramel v. State*, 92 Idaho 643, 646, 448 P.2d 649, 652 (1968); I.C.R. 57(c). This Court will not set aside a district court's finding of fact unless it is clearly erroneous, *Sanders v. State*, 117 Idaho 939, 940, 792 P.2d 964, 965 (Ct.App. 1990), *review denied*; I.R.C.P. 52(a), *i.e.*, unless it is not supported by substantial and competent evidence, *Lipps v. State*, 94 Idaho 185, 186, 484 P.2d 734, 735 (1971).

### A. *The Alleged Bailiff Misconduct.*

Pratt contends that the bailiff failed to keep the jurors free of external communications and made some statements to jurors regarding the deliberations.

In *Rueth v. State*, 100 Idaho 203, 596 P.2d 75 (1978), *appeal after remand*, 103 Idaho 74, 644 P.2d 1333 (1982), this Court set forth a four step process for analyzing a trial court's communications with a jury outside the courtroom and off the record:

(1) It is for the losing party, in the first instance, to show that there was some communication off the record and not in open court. (2) The burden then shifts to the winning party to show what the communication was. If [the winning party] cannot show what it was, the verdict must be set aside. (3) If [the winning party] can show what the communication was but it appears to have been of such a character that it *may* have affected the jury, then the verdict must be set aside. (4) Only if it is made clearly to appear that the communication *could not have had any effect,* can the verdict be allowed to stand.

*Rueth*, 100 Idaho at 209, 596 P.2d at 81 (emphasis in original).[11]

The trial court ruled that Pratt failed to satisfy the first prong of the *Rueth* analysis. In this regard, the court pointed to conflicting, inconclusive, and uncorroborated testimony from the jurors and the bailiff. Specifically, the court stated that the testimony of juror Patricia Nelson did not establish that the case was discussed in front of alternate jurors, that the jury foreman denied bringing a newspaper into the jury room during deliberations, that the juror who testified that the bailiff made a comment concerning getting something done in fifteen minutes did not say that the remark was directed at him or place the remark in the full context of the conversation, and that there was no testimony concerning the contents of some documents that one of the jurors allegedly examined on the bench and at defense counsel's table. In addition, the bailiff testified that he did not recall discussing the Pratt brothers' involvement in the Christopher Boyce bank robberies in front of any of the jurors. The trial court weighed all of the testimony and ruled that the preponderance of the evidence did not support Pratt's arguments. Our review satisfies us that substantial and competent evidence supports the trial court's findings. In other words, Pratt did not establish that there was a communication off the record. Thus, we hold that the first prong of the *Rueth* analysis has not been met by Pratt.

---

11. This standard has been applied in both criminal, *State v. Randolph*, 102 Idaho 153, 155, 627 P.2d 782, 784 (1981), and civil, *Hinman v. Morrison–Knudsen Co., Inc.*, 115 Idaho 869, 872, 771 P.2d 533, 536 (1989); *Rueth*, cases, as well as to judge-jury, *Randolph; Rueth*, and bailiff-jury, *Hinman*, communications.

**568**

### B. *Ineffective Assistance of Counsel.*

To prevail on a claim of ineffective assistance of counsel during trial, a petitioner for post-conviction relief:

> must demonstrate not only that his counsel's performance was deficient, but that the deficient performance so prejudiced his or her defense as to deprive him or her of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Storm v. State,* 112 Idaho 718, 735 P.2d 1029 (1987); *Estes v. State,* 111 Idaho 430, 725 P.2d 135 (1986). To establish deficient performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness" *Strickland,* 466 U.S. at 668, 104 S.Ct. at 2065. To prove prejudice requires a showing that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. *Accord Gibson v. State,* 110 Idaho 631, 718 P.2d 283 (1986).

*Parrott v. State,* 117 Idaho 272, 275, 787 P.2d 258, 261 (1990).

■ Pratt's allegations of ineffective assistance of counsel deal with (1) the stipulation that Pratt fired the fatal shot that killed Brent Jacobson, (2) counsel's failure to further develop the hypothermia issue, and (3) counsel's preparation for and presentation of evidence at sentencing regarding mitigating factors. Our review of the record reveals that there is no showing that not stipulating to the fatal shot, further developing the hypothermia issue, and a more thorough preparation for and presentation at sentencing would have produced a different result. This Court will not second-guess the tactical and strategic choices of trial counsel. *State v. Larkin,* 102 Idaho 231, 233, 628 P.2d 1065, 1067 (1981). There is substantial and competent evidence to support the district court's finding in this regard.

### XV.

■ Pratt contends that the district court erred by ruling that Pratt had not been denied a fair trial by the state's alleged failure to disclose exculpatory evidence. Specifically, Pratt contends that the state failed to disclose a statement made by Pratt to a jailer regarding whether the victim was killed with his "9 millimeter," and that the state failed to disclose that the sheriff's office was looking for "a long gun" the day after the Pratts were arrested.

■ The proper inquiry is whether the information at issue is material, *i.e.,* "whether the information tends to create a reasonable doubt about guilt, *State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977), or is otherwise 'obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request.'" *State v. Rhoades,* 121 Idaho 63, 75, 822 P.2d 960, 972 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 962, 122 L.Ed.2d 119 (1993), citing *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1975).

As in *Rhoades,* we do not believe that the outcome of Pratt's trial would have been different had the state notified him of the two pieces of information. As to the first piece of information, Pratt made the statement to the jailer, and the fact remains that Brent Jacobson was killed by a shotgun blast, not a 9 millimeter slug. Secondly, Pratt testified at trial that he was armed with a shotgun. This information neither tends to create a reasonable doubt, nor is of obvious substantial value to Pratt. The district court's finding in this regard is not clearly erroneous.

### XVI.

■ "Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Supreme Court of Idaho." I.C. § 19–2827(a). This Court is required to "consider the punishment as well as any errors enumerated by way of appeal," I.C. § 19–2827(b), and to determine, with regard to the sentence of death:

> (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the judge's finding of a statutory aggravating circumstance from among those enumerated in section 19–2515, Idaho Code, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

I.C. § 19–2827(c). Finally, this Court is required, when reviewing a sentence of death, to refer to similar cases which we consider, I.C. § 19–2827(e), and we may either affirm the sentence, I.C. § 19–2827(e)(1), or set it aside and remand for resentencing, I.C. § 19–2827(e)(2).

### A. *I.C. § 19–2827(c)(1): Passion, Prejudice, Or Any Other Arbitrary Factor:*

▮ Our review of the record satisfies us that the sentencing court did not sentence Pratt to death under the influence of passion or prejudice, or by way of any other arbitrary factor. The mere fact that the same judge presided at both the trial and at sentencing does not violate the command of I.C. § 19–2827(c)(1). *See State v. Leavitt,* 121 Idaho 4, 9, 822 P.2d 523, 528 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992). In addition, we recognize that the sentencing court did make the following comment, appearing at the very end of his I.C. § 19–2515 findings:

It is the conclusion of this Court that the death penalty should be imposed. The reason for this is the strong deterrent effect such a penalty will have upon other criminals who seek to avoid apprehension and arrest by means of force and violence. Every day society expects peace officers to put their lives on the line to apprehend criminals. Capital punishment for the killing of an officer performing such duty should be a powerful deterrent to protect the lives of all peace officers.

However, the sentencing court's I.C. § 19–2515 findings must be read as a whole. As a whole, the I.C. § 19–2515 findings reveal that the court properly considered, analyzed, and accepted or rejected mitigating circumstances and aggravating circumstances, and that the court properly weighed each statutory aggravating circumstance found to exist

against all of the mitigating circumstances found to exist. Further, the record shows that the court operated within the bounds of its guided discretion by concluding that Pratt be sentenced to death because at least one of the aggravating circumstances outweighed all of the mitigating circumstances. The above-quoted statement of the court, appearing at the end of its I.C. § 19–2515 findings after it had properly conducted the statutory analysis, is mere surplusage and does not, by itself, invalidate the court's decision.

### B. *I.C. § 19–2827(c)(2): Aggravating Factors:*

▮ At the conclusion of the sentencing proceedings, the district court found that the single aggravating factor enumerated in I.C. § 19–2515(g)(7) outweighed all of the mitigating factors, and, thus, justified the imposition of the death penalty. The district court stated:

The mitigating circumstances herein do not outweigh the statutory aggravating circumstance found in I.C. § 19–2515(g)(7). The killing herein was of a police officer acting in the line of duty, known by the Defendant to be acting in the line of duty and committed during the on-going commission of serious and dangerous felony offenses and was accompanied with the specific intent to cause death.

The evidence in this case supports, beyond a reasonable doubt, the sentencing court's finding of this statutory aggravating circumstance.

### C. *I.C. § 19–2827(c)(3): Proportionality Review:*

Proportionality review requires this Court to consider:

(1) the nature of, and the motive for, the crime committed; (2) the heinous nature of the crime; and (3) the nature and character of the defendant to determine whether the sentence was proportionate and just.

*Pizzuto,* 119 Idaho at 778, 810 P.2d at 716.

▮ The record shows that Pratt murdered Brent Jacobson while trying to evade pursuing police officers. Further, the record shows that the murder was the apex of a

criminal episode that began the day before when the Pratt brothers entered another person's home, armed and dressed in black, for the purpose of stealing money, that they assaulted several people, fired at a pursuing police car, and set out across the forest on foot, hoping to shake off the relentless pursuit. The record further discloses that the Pratts surrendered to the police shortly after the shoot-out.

The Pratt brothers engaged in a shoot-out with two of the pursuers, Brent Jacobson and Steve Barbieri. It is clear that several shots were fired by the parties to the shoot-out. Brent Jacobson died as the result of bleeding from a shotgun blast fired from close range. Furthermore, the jury specifically rejected, as a basis for its first degree murder verdict, that the Pratts were "lying in wait" for their pursuers. After the shoot-out, Steve Barbieri left the area to find assistance, and the

Pratt brothers fled to a nearby house, where they surrendered.

The record shows that James Pratt has no prior felony record. There is no evidence of alcohol or drug abuse, and there is no evidence that Pratt was suffering from any kind of mental or physical defect at the time of the murder. He has lived in several places during his lifetime, has worked several different jobs, and has a high school education.

We have compared the nature of the crime and the nature of the defendant in this case with other similar cases [12], and we hold that the death penalty in this case is disproportionate.

Our review of similar cases leads us to the conclusion that *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408

12. *State v. Hoffman,* 123 Idaho 638, 851 P.2d 934 (1993); *State v. Orr,* 123 Idaho 55, 844 P.2d 684 (1992); *State v. Weinmann,* 122 Idaho 631, 836 P.2d 1092 (Ct.App.1992); *State v. Thomasson,* 122 Idaho 172, 832 P.2d 743 (1992); *State v. Brewer,* 122 Idaho 213, 832 P.2d 1148 (Ct.App. 1992); *State v. Card,* 121 Idaho 425, 825 P.2d 1081 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Pizzuto,* 119 Idaho 742, 810 P.2d 680 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1268, 117 L.Ed.2d 495 (1992), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *State v. Enno,* 119 Idaho 392, 807 P.2d 610 (1991); *State v. Sivak,* 119 Idaho 320, 806 P.2d 413 (1990); *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *State v. Smith,* 117 Idaho 891, 792 P.2d 916 (1990); *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990); *State v. Leavitt,* 116 Idaho 285, 775 P.2d 599 (1989), *cert. denied,* 493 U.S. 923, 110 S.Ct. 290, 107 L.Ed.2d 270 (1989), *appeal after remand,* 121 Idaho 4, 822 P.2d 523 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 460, 121 L.Ed.2d 368 (1992); *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989), *cert. denied,* 493 U.S. 922, 923, 110 S.Ct. 287, 290, 107 L.Ed.2d 267 (1989), *overruled in part by Card,* 121 Idaho at 432, 825 P.2d at 1088; *McKinney v. State,* 115 Idaho 1125, 772 P.2d 1219 (1989), *cert. denied,* 497 U.S. 1031, 110 S.Ct. 3292, 111 L.Ed.2d 800 (1990); *State v. Fetterly,* 115 Idaho 231, 766 P.2d 701 (1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989); *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d

585 (1986); *State v. Windsor,* 110 Idaho 410, 716 P.2d 1182 (1985), *cert. denied,* 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986); *State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Beam,* 109 Idaho 616, 710 P.2d 526 (1985), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2260, 90 L.Ed.2d 704 (1986); *State v. Stuart,* 110 Idaho 163, 715 P.2d 833 (1985); *State v. Bainbridge,* 108 Idaho 273, 698 P.2d 335 (1985), *appeal after remand,* 117 Idaho 245, 787 P.2d 231 (1990); *State v. Aragon,* 107 Idaho 358, 690 P.2d 293 (1984); *State v. McKinney,* 107 Idaho 180, 687 P.2d 570 (1984); *State v. Paradis,* 106 Idaho 117, 676 P.2d 31 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Gibson,* 106 Idaho 54, 675 P.2d 33 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3592, 82 L.Ed.2d 888 (1984); *State v. Sivak,* 105 Idaho 900, 674 P.2d 396 (1983), *cert. denied,* 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *State v. Creech,* 105 Idaho 362, 670 P.2d 463 (1983), *cert. denied,* 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 722 (1984); *State v. Major,* 105 Idaho 4, 665 P.2d 703 (1983); *State v. Mitchell,* 104 Idaho 493, 660 P.2d 1336 (1983), *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *State v. Carter,* 103 Idaho 917, 655 P.2d 434 (1981); *State v. Olin,* 103 Idaho 391, 648 P.2d 203 (1982); *State v. Osborn,* 102 Idaho 405, 631 P.2d 187 (1981), *appeal after remand,* 104 Idaho 809, 663 P.2d 1111 (1983); *State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980); *State v. Padilla,* 101 Idaho 713, 620 P.2d 286 (1980); *State v. Fuchs,* 100 Idaho 341, 597 P.2d 227 (1979); *State v. Needs,* 99 Idaho 883, 591 P.2d 130 (1979); *State v. Lindquist,* 99 Idaho 766, 589 P.2d 101 (1979), *appeal after remand,* 101 Idaho 688, 619 P.2d 1141 (1980).

(1986), and *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986), wherein we reversed the district court's imposition of the death penalty as being disproportionate, are most similar to the present case. In particular, the nature and character of Pratt is most similar to the defendants in *Windsor* and *Scroggins,* where the defendants did not actually kill the victim (in *Windsor,* Donald Fetterly was the actual killer, and in *Scroggins,* Albert Beam was the actual killer), and where neither defendant had a prior record or history of violent criminal conduct. We do note that in this case Pratt did fire the fatal shot, however, our comparison of this case to *Windsor* and *Scroggins* focuses on the nature and character of the defendant and not the nature of the crime. Pursuant to I.C. § 19–2827(e), we vacate the sentence of death imposed upon James Kevin Pratt and remand this case to the district court for resentencing.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment of conviction and the sentences imposed, except (1) the conviction and sentence for Count XVI, attempted felony murder, which we vacate, and (2) the death sentence, which we vacate. The case is remanded to the district court for resentencing.

TROUT, J., and BENGTSON, J. Pro Tem., concur.

BISTLINE, Justice concurring, concurring in the result, and dissenting.

## I. THE DEATH PENALTY

This Justice wholeheartedly agrees with the majority's conclusion that James Pratt should not be put to death. My disagreement with the majority is over how it gets to that result. The correct holding is that James Pratt is not eligible for the death penalty because he did not commit first degree murder. Accordingly, I dissent from parts II and III which hold to the contrary.

There are six statutory definitions of first degree murder. I.C. § 18–4003(a)–(f).

James Pratt was found guilty of committing alternatives (b) (murder of a peace officer or executive officer who was acting in the lawful discharge of an official duty) and (d) (murder committed in the perpetration of, or an attempt to perpetrate certain enumerated crimes). He committed neither.

A. *A United States Forest Service Officer is not a Peace Officer nor an Executive Officer for purposes of I.C. § 19–4003(b).*

The majority's analysis in this section of its opinion appears to be somewhat bizarre. What they hold is this: United States Forest Service officers are not included in any statutory definition of the term peace officer found in the Idaho Code, therefore, *a fortiori,* United States Forest Service officers must be peace officers for purposes of I.C. § 19–4003(b). Mr. Noah Webster likely would be surprised, as was I, on observing the majority's stunning revelation as to the proper use of definitions. It has always been my belief that the absence of a term from a definition meant it was not included therein.

In my view, the proper analysis as to the peace officer question is this: 1) The term peace officer is not defined in the first degree murder statute; 2) the definitions of peace officer which appear in other portions of the Idaho Code do not include United States Forest Service officers; 3) therefore, the first degree murder statute is, at best, ambiguous as to whether a United States Forest Service officer is a peace officer; and 4) whereas under the rule of lenity criminal statutes are strictly construed, *State v. Sivak,* 119 Idaho 320, 325, 806 P.2d 413, 418 (1990), 5) it must be concluded that United States Forest Service officers *are not peace officers* within the meaning of I.C. § 19–4003(b).

Additionally, Jacobson was not an executive officer under I.C. § 19–4003(b). Again, that term is not defined in the statute. However, art. 4 § 1 of the Idaho Constitution lists the executive officers of the State as the "governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general and supervisor of public education." Jacobson did not hold any of these offices and therefore was not an executive officer

within the purposes and scope of the statute. Furthermore, I.C. § 19–4003(b) does not apply to federal executive officers, nor does it purport to. Such officers are given no mention in the statute. Even were federal executive officers included, Jacobson did not hold a position of executive authority in the federal government.

Brett Jacobson was a loyal, dutiful, steadfast, well-respected employee of the United States Forest Service, but he did not hold a position that is unambiguously included within I.C. § 19–4003(b). Accordingly, the rule of lenity mandates a holding that he was neither a peace officer nor an executive officer for purposes of the statute. Accordingly, James Pratt did not commit first degree murder under alternative (b) of I.C. § 19–4003.

B. *Jacobson was not Acting in the Lawful Discharge of an Official Duty at the Time he was Shot.*

A second reason for holding that James Pratt did not commit alternative (b) first degree murder is that Jacobson, when shot, was not acting in the lawful discharge of an official duty.[13] This is so because: 1) United States Forest Service officers lack the authority to assist local law enforcement officers outside national forest land, and 2) Jacobson's tracking of the Pratts took place entirely outside national forest land.

Jacobson was assisting the Bonner County Sheriff pursuant to a "Cooperative Agreement" between Bonner County and the United States Department of Agriculture, of which the United States Forest Service is a division. That agreement provides that the United States Forest Service agrees

[t]o provide support and cooperation to Bonner County in the enforcement of State and local laws *on lands and water within or a part of any unit of the National Forest System.*

The United States Forest Service was permitted to enter into this cooperative agree-

ment by 16 U.S.C. § 551a, which was passed to provide relief to state and local law enforcement personnel because of the extra duties resulting from visitors coming onto the lands and waters within boundaries of national forest lands. Senate Report (Agriculture and Forest Committee) No. 92–312 (1971). That statute states that

[t]he Secretary of Agriculture, in connection with the administration and regulation of the use and occupancy of the national forest and national grasslands, is authorized to cooperate with any State or political subdivision thereof, *on lands which are within or part of any unit of the national forest system, in the enforcement or supervision of the laws or ordinances of a State or subdivision thereof.*

Thus, under the agreement between the United States Forest Service and Bonner County as well as the federal statute which authorized such agreements, Jacobson's authority was limited to those lands which were within or a part of a national forest. It necessarily follows that any action taken outside that territory is outside the lawful duties of a United States Forest Service officer. The trial testimony and exhibits show that Jacobson assisted in tracking the Pratts on land that was neither a part of nor within any unit of the national forest. Therefore, Jacobson, even assuming he was a peace officer, was not acting in the lawful discharge of an official duty. To the contrary, he was acting outside the jurisdiction which had been carefully prescribed by the United States Congress. Consequently, James Pratt is not guilty of alternative (b) first degree murder and thus not eligible for the death penalty on that ground.

C. *The Killing did not Occur in the Perpetration of, or in an Attempt to Perpetrate, the Robbery, Burglary, or Kidnapping.*

James Pratt argues that he did not commit alternative (d) first degree murder (felony-

---

**13.** Because this Court is statutorily required to review independently the "punishment as well as any errors enumerated by way of appeal," I.C. § 19–2827(b), we can address this issue even though it was not raised on appeal. The trial

court relied in large part in sentencing James Pratt to death—in other words, in determining punishment—upon its erroneous conclusion that Jacobson was a peace officer acting the line of duty.

murder) because the shooting did not take place during the perpetration of any of the predicate felonies. He is correct.

As the word perpetration is not a term of art, the Court should give it its common meaning. *Oregon Short Line R.R. v. Pfost,* 53 Idaho 559, 572–73, 27 P.2d 877, 882 (1934); *see also* Sutherland Statutory Construction § 47.28 (5th Ed). The common meaning of perpetration is "commission." Webster's II New Riverside University Dictionary, 876 (1988). Thus, the scope of the felony murder rule is limited to any killings which occurred in conjunction with the actual commission of one of the enumerated felonies, not during the escape thereafter. In this case, the shooting of Jacobson was not in the perpetration of the felonies because it did not take place at the scene of the other crimes and because it did not occur until twenty hours after the other crimes were committed.

*State v. Fetterly,* 109 Idaho 766, 710 P.2d 1202 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986), the only case cited by the majority, does not support the majority's conclusion. In that case, this Justice agreed with the majority's conclusion that Fetterly had committed felony murder because the murder "was part of a stream of events which began the evening Fetterly and Windsor entered Grammer's home and ended the following day when Grammer's possessions were removed from his home." 109 Idaho at 771–72, 710 P.2d at 1207–08. There, the defendants entered a home intending to commit theft. *They remained in the home until the owner returned and killed the owner before they removed his possessions from the home.* The killing in that case was during the perpetration of a felony because it was committed at *the same place* where the burglary was committed and also *before the burglary was completed.* Those facts are obviously distinguishable from the instant case in that the shooting here took place hours after and miles away from the commission of the other felonies. In short, nothing in *Fetterly* even supports, much less compels, the majority's conclusion.

**14.** If the Court needed to reach those issues I would join Justice Johnson's views as to parts X and XVI(A). 125 Idaho at 574, 873 P.2d at 828,

In sum, there is insufficient evidence to support the jury's finding that James Pratt committed first degree murder. Because he did not commit a crime for which the death penalty is a potential punishment, this Justice concurs in the result in part XVI(C) (death penalty disproportionate). In light of the above, I express no opinion as to the issues discussed in parts VIII (holding that the Boyce evidence was made available to James Pratt prior to sentencing), X (consideration of mitigating circumstances), XI (sentencing alternatives), XII (constitutionality of death penalty statute), and XVI(A) and (B) (independent review of death sentence other than proportionality). It should also be noted that the majority need not address those issues as the reversal of the death sentence and the remand for resentencing renders them moot. In my view, the Court's discussion in those sections is mere *dicta.*[14]

## II. TRIAL ERRORS

Because of the errors noted below, the conviction should be reversed and the cause remanded for a new trial.

### A. The Reasonable Doubt Instruction is Insufficient.

The giving of the reasonable doubt instruction in this case was reversible error for the same reasons expressed in *State v. Rhoades,* 121 Idaho 63, 83–4, 822 P.2d 960, 980–1 (1991) (Bistline, J., dissenting), *cert. denied,* — U.S. —, 113 S.Ct. 962, 122 L.Ed.2d 119 (1993). Accordingly, I would reverse and remand for a new trial. *Sullivan v. Louisiana,* — U.S. —, —, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) (holding that the giving of an erroneous reasonable doubt instruction can never be harmless error).

### B. The Criminal Negligence Instruction Which was Given to the Jury Lowers the State's Burden of Proof.

Instruction number 49 read:

(Johnson, J., concurring, concurring in the result, and dissenting).

You are instructed that in every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence.

Criminal negligence which will make an act a crime is gross negligence. Such negligence amounts to a wanton, flagrant or reckless disregard of consequences, or willful indifference of the safety or rights of others.

I concur with Justice Johnson in his analysis of this instruction. He believes that the instruction could have misled the jury into believing "it could use criminal negligence to substitute for specific intent." 125 Idaho at 574, 873 P.2d at 828 (Johnson, J., concurring, concurring in the result, and dissenting). If the jury read the instruction in that way, the State's burden of proof was lowered and the State was relieved of its duty to prove every element of the offense beyond a reasonable doubt as required by *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Reversal is therefore required.

JOHNSON, Justice, concurring, concurring in the result, and dissenting.

I concur fully in parts I, II, III, IV, VI, VII, VIII, IX, XII, XIII, XIV, XV, and XVI(B) of the Court's opinion.

I concur in all of part V, except the portion dealing with Instruction No. 49 (Criminal Negligence). In my view, this instruction raises serious questions concerning whether the jury believed it could use criminal negligence to substitute for specific intent. Because I cannot conclude this error was harmless, I would reverse and remand for a new trial on this ground.

I dissent from part X, because of the trial court's comment offsetting the association with Boyce against the mitigation of "years of being largely self-sufficient and employed." While I am willing to let the trial court determine what are mitigating circumstances pursuant to I.C. § 19–2515(c), in applying this offset, the trial court, in effect, treats the association with Boyce as an aggravating circumstance, rather than a background fact. The weighing by the trial court is supposed to be of "the mitigating circumstances presented." I would vacate the sentence for this reason and remand for resentencing.

I concur in the result of part XI. In my view, the portion of *State v. Leavitt*, 116 Idaho 285, 294, 775 P.2d 599, 608 (1989) concerning the trial court's misperception of alternatives is dicta. The dispositive part of *Leavitt* is the portion holding that the trial court did not adequately weigh mitigating and aggravating factors.

I dissent from part XVI(A), because of the trial court's comment quoted in the Court's opinion. Allowing the death penalty to be imposed on the basis of this rationale, violates the requirements of I.C. § 19–2515, which were designed to structure the exercise of discretion by the trial courts in death penalty cases to eliminate arbitrariness and capriciousness.

I concur in the result of part XVI(C). The approach I take in determining whether the death sentence imposed in this case is excessive or disproportionate is outlined in my concurring and dissenting opinion in *State v. Card*, 121 Idaho 425, 448–459, 825 P.2d 1081, 1114–1125 (1992). Appended to my opinion in the present case is an updated summary of the cases I have considered.

The cases I find most similar to this one so far as the crime is concerned are:

1. *State v. Searcy* (determinate life sentence imposed)

2. *State v. Paz* (death penalty imposed)

3. *State v. Card* (death penalty imposed)

4. *State v. Orr* (life with fifteen years fixed imposed)

Based on a comparison of *Searcy* and *Orr*, I have a serious question whether the death sentence imposed in this case is excessive or disproportionate. When I balance this against the imposition of the death penalty in *Card*, however, I am inclined to find the death sentence imposed on Pratt not to be excessive or disproportionate.

The only case I find similar to this one so far as the circumstances of the defendant are concerned is *State v. Windsor* (death sen-

tence vacated on appeal as disproportionate). on Pratt to be excessive and disproportion-
Therefore, I find the death sentence imposed ate.

**APPENDIX TO *JAMES PRATT* OPINION OF JOHNSON, J.**

| CASE NAME & CITATION | CHARACTERISTICS OF DEFENDANT | CIRCUMSTANCES OF MURDER | CONVICTION AND SENTENCE BY TRIAL COURT | DISPOSITION BY IDAHO SUPREME COURT OR COURT OF APPEALS |
|---|---|---|---|---|
| State v. Hoffman, 123 Idaho 638, 851 P.2d 934 (1993). | Antisocial personality and low intelligence; problems with violating law since childhood; extensive record of criminal violence as adult; use and distribution of drugs; failed to take responsibility or show remorse for murder. | Defendant and cohorts took female victim to remote area, where defendant slashed victim's throat; cohort stabbed victim; defendant and cohort buried victim with rocks; crushing blow of rock to head was cause of death. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Orr, 123 Idaho 55, 844 P.2d 684 (1992). | Drug dealer; involved in relationship with woman, who had been in relationship with victim; set up on drug possession charge by victim. | Defendant, woman, and victim travelled to Idaho from Illinois to relocate defendant because of drug possession charge; victim purchased shotgun for defendant; defendant shot victim with shotgun after victim threatened woman's life if she did not return to Illinois with him. | First-degree murder. Sentenced to term of life, with 25 years fixed. | Affirmed. |
| State v. Weinmann, 122 Idaho 631, 836 P.2d 1092 (Ct. App.1992). | 19 years old when sentenced; raised in foster care; lived in facility for seriously emotionally disturbed children; undersocialized conduct disorder with aggressive traits; history of antisocial behavior; as adult, committed or abetted a number of criminal activities; terminated from job for stealing food; "rolled" or mugged homosexuals for money; stole automobiles; did not stop cohort from killing and attempting to kill others. | Defendant and cohort (Brewer) met victim in park; defendant and cohort accepted victim's offer to stay at home and eat; cohort stabbed victim several times with butcher knife; defendant watched passively and did not stop cohort. | First-degree murder. Life sentence, with 25 years fixed. | Affirmed by Court of Appeals. |
| State v. Brewer, 122 Idaho 213, 832 P.2d 1148 (Ct.App. 1992). | 17 years old at time of murder; troubled background; dropped out of high school in tenth grade; used alcohol, marijuana, and other drugs since age 14; never held job; supported self by stealing; | See Weinmann above; defendant stabbed victim 11 times to take money, credit cards, and vehicle. | First-degree murder. Sentenced to life, with 35 years fixed. | Affirmed by Court of Appeals. |

| | | | | |
|---|---|---|---|---|
| | treated for emotional disturbance and released about one month before murder; charges pending in California for murder and attempted murder. | | | |
| State v. Thomasson, 122 Idaho 172, 832 P.2d 743 (1992). | 17 years old at time of murders; previously been in trouble with police. | Defendant shot and killed both of adoptive parents in home. | Two counts of first-degree murder. Sentenced to two consecutive life terms, with 20 years fixed. | Affirmed. |
| State v. Rhoades (Michelbacher case), 121 Idaho 63, 822 P.2d 960 (1991). Second rehearing denied 1/1/92. | See Rhoades (Baldwin case) below. | Defendant shot female victim. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Card, 121 Idaho 425, 825 P.2d 1081 (1991). | 28 years old at time of murders; never married; no children; living with mother and step-father; did not graduate from high school, but obtained GED; periodic employment as janitor, ranch hand, and general laborer; previously convicted of reckless driving and three charges of DUI; problem with marijuana and alcohol in high school; when 17 years old became reclusive, heard voices, acted scared; mental problems; spent time in psychiatric facility for psychotic disorder a few years before murders; determined mentally incompetent after murders; diagnosed schizophrenic; ruled competent before trial. | After incident with store clerk, defendant shot and killed couple who were parked near a store early in the morning newspapers for their route. | Two counts of first-degree murder. Death penalty imposed. | Affirmed. |
| State v. Leavitt, 121 Idaho 4, 822 P.2d 523 (1991) on appeal after remand in 116 Idaho 285, 775 P.2d 599 (1989). | Comes from law-abiding family; father, husband, and son; steadily employed; suffers from intermittent explosive disorder; lengthy criminal record, but no prior felony conviction; probably previously committed rape and arson; morbid sexual curiosity; frequent possession and use of knives; use of knives to increase satisfaction during sexual intercourse; no remorse or excuse for murder; model prisoner, using time to ex- | Defendant slashed and stabbed female victim with knife 15 separate times and removed victim's sexual organs removed by slashing. | First-degree murder. Death sentence reversed; case remanded for resentencing. Death penalty imposed on resentencing. | Affirmed. |

| | | | | |
|---|---|---|---|---|
| | *press self through artistry and poetry.* | | | |
| *State v. Enno, 119 Idaho 392, 807 P.2d 610 (1991).* | *18 years old male, suffered to a moderate degree form an anti-social personality disorder, severe alcoholic, troubled childhood.* | *Defendant and victim were drinking together at a bar after which they traveled to a remote area where victim apparently made sexual advances toward defendant. Victim taunted defendant after he refused her advances which prompted defendant to choke victim until blood came out of her mouth. During the ensuing struggle victim and defendant ended up outside of the automobile after which defendant struck victim with a board and later repeatedly ran over her with the automobile. Defendant then burned the body of the victim with lighter fluid and charcoal.* | *First-degree murder. Sentenced to fixed life.* | *Affirmed.* |
| *State v. Rhoades, 120 Idaho 795, 820 P.2d 665 (1991). (Baldwin case)* | *Thirty-one-year-old male; unmarried; lived with parents; dropped out of school in ninth grade; physical problems caused by polio; worked in processing plant and drywall construction; abused alcohol and drugs; having physical difficulties on night of arrest; assumed to be result of drugs or intoxication.* | *Kidnapped female convenience store clerk, drove to secluded area; attempted to attack her; and later shot her as she was crawling away; left victim for dead.* | *Convicted of first-degree murder, kidnapping, robbery and use of a firearm. Death penalty imposed.* | *Affirmed.* |
| *State v. Pizzuto, 119 Idaho 742, 810 P.2d 680 (1991); overruled by State v. Card, 121 Idaho 425, 825 P.2d 1081 (1991).* | *Previously convicted of criminal sexual conduct and manslaughter in other states. Sociopath exhibiting "explosive features," violent individual, expressed no remorse, history of violent behavior.* | *Defendant robbed and murdered woman and her adult nephew in their cabin with a hammer; one of the victims was also shot, victims were buried in a shallow grave near the scene of the murders.* | *First-degree murder, felony murder, robbery. Death sentence imposed.* | *Affirmed.* |
| *State v. Searcy, 120 Idaho 882, 820 P.2d 1239 (Ct.App. 1991), appeal after remand in 118 Idaho 632, 798 P.2d 914 (1990).* | *Troubled childhood, addiction to cocaine, psychiatric evidence indicating lack of mental responsibility. Committed various crimes to support chemical dependency.* | *Defendant planned robbery of victim's grocery store in order to get money to buy cocaine. Defendant hid in store where he was later confronted by victim, a struggle fol-* | *First-degree murder, and robbery. Sentenced to determinate life sentence on first-degree murder. On remand, from first appeal, det-* | *Affirmed by Court of Appeals.* |

| | | | | |
|---|---|---|---|---|
| | | lowed during which defendant shot victim in the stomach. Defendant told victim that if she opened the safe, he would call an ambulance. Victim opened safe after which defendant placed a rifle to her head and shot and killed her. | erminate life sentence imposed. | |
| *State v. Paz,* 118 Idaho 542, 798 P.2d 1 (1990). | Prior manslaughter conviction in Oregon, showed no rehabilitation after previous fines, probation, incarceration and parole, high probability that Paz would remain unpredictable and irrational in overreacting to confrontation and likely to kill fellow inmates if imprisoned. | Shot and killed victim in restaurant after earlier engaging in verbal exchange with victim and two of victim's companions; companions seriously injured in shooting. | First Degree Murder. Death penalty imposed. | *Affirmed.* |
| *State v. Smith,* 117 Idaho 891, 792 P.2d 916 (1990). | Chemical dependency, dominated by his brother (deceased accomplice); various prior criminal activity and outstanding warrants. | Body of victim was discovered in a partially burned stolen Cadillac. Later, .22 and .38 caliber bullets were removed from the victim's body and fingerprints of defendant were found in the Cadillac. | First-degree murder, robbery, and third-degree arson. Fixed life sentence on conviction of first-degree murder and consecutive fixed-life sentence on robbery conviction. | *Affirmed.* |
| *State v. Bainbridge,* 117 Idaho 245, 787 P.2d 231 (1990); 108 Idaho 273, 698 P.2d 335 (1985). | Evidence was admitted indicating defendant's behavior and thinking were suggestive of organic brain disfunction possibly caused or enhanced by a severe head injury from a motorcycle accident, defendant was viewed as being good natured and eager to please, hypersuggestable to the influence of others, reading and writing problem although not retarded, 10th grade education. | Victim, a female cashier who was acquainted with defendant and Sivak was shot several times and stabbed numerous times while working at gas station, victim was also sexually assaulted, defendant along with co-defendant (Sivak) robbed store. | First-degree murder and robbery. Sentenced to two consecutive fixed-life sentences. | *Affirmed.* |
| *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989). | Aggressive antisocial personality prone to violence. | Defendant and brother robbed and murdered retired marine officer and wife while camping in Idaho County, victims held at gunpoint and killed with multiple blows to the skull from night stick. | Two counts of first-degree murders. Death penalty imposed. | *Affirmed.* |
| *McKinney v. State,* 115 Idaho 1125, 772 | Defendant claimed he was physically and sexually abused by his father as a | Defendant repeatedly shot victim, a recent acquaintance, | First-degree murder, conspiracy to commit | *Affirmed.* |

| | | | | |
|---|---|---|---|---|
| P.2d 1219 (1989); 107 Idaho 180, 687 P.2d 570 (1984). | child. | with .22 caliber pistol after driving to an abandoned gravel pit presumably for target practice, victim was also robbed and car was stolen. The killing was done in a cold-blooded and callous fashion, sole motive was monetary gain, victim shot in the body and killed, execution style. | murder; robbery; and conspiracy to commit robbery. Death penalty imposed. | |
| State v. Fetterly, 115 Idaho 231, 766 P.2d 701 (1988); 109 Idaho 766, 710 P.2d 1202 (1985). | Prior criminal record. | Along with co-defendant Windsor, was convicted of first-degree murder, burglary and grand theft for the robbery and stabbing death of the victim who they later dumped in the Snake River. | First-degree murder, burglary, and grand theft. Death penalty imposed. | Affirmed. |
| State v. Windsor, 110 Idaho 410, 716 P.2d 1182 (1985). | No formal criminal record or history of prior criminal activity, defendant cooperative, skills and ability which indicate defendant may ultimately be capable of maintaining employment and functioning as a productive member of society, troubled childhood. | Along with co-defendant Fetterly, was convicted of first-degree murder, burglary and grand theft for the robbery and stabbing death of the victim who they later dumped in the Snake River. Windsor did not commit actual act of stabbing victim. | First-degree murder. Death penalty imposed. | Sentence of death vacated because sentence was excessive and disproportionate. |
| State v. Scroggins, 110 Idaho 380, 716 P.2d 1152 (1985). | No history of violent criminal conduct, inadequate upbringing, age 18 at the time of crime (mental age was 13.8 years), failed to develop mature responses to stressful situations. | Defendant and co-defendant (Beam) were involved in the rape and subsequent murder of a 13–year–old female victim, the victim was drowned and throat was slashed, jury indicated that defendant committed only attempted rape and did not directly commit the crime of murder, defendant reported crime to the police. | First-degree murder; attempted rape. Death penalty imposed. | Sentence vacated, sentence of death was excessive and disproportionate to penalty imposed in similar cases. |
| State v. Stuart, 110 Idaho 163, 715 P.2d 833 (1985). | Defendant engaged in abuse of other women and their minor children prior to relationship with present girlfriend and her son, defendant had committed at least three prior rapes along with numerous examples of other violent behavior. | Defendant convicted in the beating death of a three-year-old boy, the son of his live-in girlfriend, evidence of numerous incidences of physical abuse of victim prior to death. | Murder by torture in first-degree. Death penalty imposed. | Affirmed. |

| | | | | |
|---|---|---|---|---|
| *State v. Beam, 109 Idaho 616, 710 P.2d 526 (1985).* | *The defendant abused drugs, was on parole for burglary when the murder was committed, had been exposed to and participated in prior sexually deviant behavior, had tortured animals, was impulsive, and lacked any adequate conscience.* | *The victim, a thirteen-year-old girl, was handcuffed and raped, semen was found in her vagina and rectum, the victim's throat was slashed and the cause of death was listed as drowning.* | *First-degree murder; rape. Death penalty imposed.* | *Affirmed.* |
| *State v. Aragon, 107 Idaho 358, 690 P.2d 293 (1984).* | *At the time of the incident the defendant was calm, refused to aid the victim or seek help and began planning a cover-up of his involvement, passed criminal record including charges of child abuse and assault with a deadly weapon, lack of remorse over death of victim, no further description provided.* | *Victim, eight-month-old child and daughter of defendant's female roomate died from severe blows to the head administered by defendant while victim was in bathtub.* | *First-degree murder. Death penalty imposed.* | *Affirmed.* |
| *State v. Paradis, 106 Idaho 117, 676 P.2d 31 (1983).* | *Member of Spokane motorcycle gang, no further description provided.* | *Male and female victims, who both were acquainted with co-defendants, were seen together before their van was later seen driving up a sparsely populated mountain road in Idaho. Three men were later seen leaving the sparsely populated area, included in the three men was defendant. The bodies of victims were later found. Male had been beaten severely around the head, female had been strangled and placed in a stream bed, it was determined that male was killed in Washington while female was killed in Idaho. Defendant was acquitted of the murder of male and extradited to Idaho for the murder of the female.* | *First-degree murder. Death penalty imposed.* | *Affirmed.* |
| *State v. Gibson, 106 Idaho 54, 675 P.2d 33 (1983).* | *Extensive prior criminal record, capable of manipulation, remorse is questionable, background includes extensive use of drugs and/or alcohol, not able to cope with pressure and may act out against society again, dishonor-* | *See Paradis above, defendant acquitted in murder of male, extradited to Idaho for murder of female.* | *First-degree murder. Death penalty imposed.* | *Affirmed.* |

| | | | | |
|---|---|---|---|---|
| | able discharge from service, uncooperative while on prior probation. | | | |
| State v. Creech, 105 Idaho 362, 670 P.2d 463 (1983). | Defendant previously convicted of other murders, exhibited utter disregard for human life, propensity to commit murder, under sentence for first-degree murder at the time of his actions. | While working as a janitor in prison, defendant engaged in argument with a fellow inmate. Defendant struck fellow inmate with sock containing batteries causing severe head injury and ultimate death of victim. | First-degree murder. Death penalty imposed. | Affirmed. |
| State v. Major, 105 Idaho 4, 665 P.2d 703 (1983). | Married, two children, heroin user. | Defendant and male victim had been drinking together in a local bar, defendant and victim left and went to victim's home, the body of the victim was found approximately three days later in his home, victim died from multiple stab wounds including numerous slashes to the throat. Defendant and his wife fled to California, were later arrested and extradited to Idaho. | First-degree murder. Fixed life. | Affirmed. |
| State v. Mitchell, 104 Idaho 493, 660 P.2d 1336 (1983). | Wife of victim, user of prescription drugs and alcohol. | Although it was initially suspected that victim had been murdered by strangulation during a burglary of victim and defendant's home, defendant later convicted in the contract killing of her husband. | First-degree murder. Indeterminate life sentence. | Affirmed. |
| State v. Needs, 99 Idaho 883, 591 P.2d 130 (1979). | Wife of victim, prior evidence of violent activity directed at victim. | Body of victim discovered partially burnt, without head and arms, wrapped in a bed sheet and covered by a door. Death of victim caused by either gun shots, decapitation, or a slit throat. | First-degree murder. Sentence of life imprisonment. | Affirmed. |